IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ISMAIL ALI AL RAMMI, et al.,**     ) | |
|       *Petitioners/Plaintiffs,*     ) | |
|                                      ) | |
|                                      )   | Civil Action No. 05-CV-2381 (JDB) |
|       **v.**                         ) | |
|                                      ) | |
|                                      ) | |
| **GEORGE W. BUSH, et al.,**          ) | |
|       *Respondents/Defendants.*      ) | |

**PETITIONERS' RESPONSE TO ORDER TO SHOW CAUSE**

This Court has ordered Petitioners to show cause why this case should not be dismissed "in light of the inability of the government to identify the alleged detainee . . . and given the absence of any allegations in the petition indicating that counsel or the other petitioners have had any communication with the alleged detainee since his alleged detention (or have any specific basis to believe he is or has been actually detained at Guantanamo Bay)." This Court should not dismiss the Petition.

The Yemeni government has twice identified Petitioner Ismail Ali Al Rammi ("Mr. Al Rammi") as a detainee held by the United States at Guantanamo. Although the United States has not been able to identify Ismail Ali Al Rammi as the name of a Guantanamo detainee, it also has not and apparently cannot rule out the possibility that Mr. Al Rammi is detained at Guantanamo under another name. The evidence that would either confirm or deny that Mr. Al Rammi is being detained at Guantanamo is within the possession of Respondents, but Petitioners have had no opportunity to pursue discovery of that evidence because of the stay imposed in this case.

Notwithstanding the stay, Petitioners have been pursuing informal methods for obtaining additional information relevant to Mr. Al Rammi's whereabouts. Counsel for Petitioners and Respondents have been cooperating in trying to determine whether Mr. Al Rammi is being held

under another name. In addition, Petitioners' counsel are also in the process of trying to obtain additional information about Mr. Al Rammi from the Yemeni government and from other sources. In light of these ongoing informal processes for determining whether Mr. Al Rammi is being detained at Guantanamo, as well as the procedural posture of this case, it would be inappropriate for the Court to dismiss the Petition. Petitioners request that this Court hold any further action in abeyance while Petitioners continue to find additional information that will either confirm that Mr. Al Rammi is being held at Guantanamo or lead to the voluntary dismissal of the Petition.

## FACTUAL BACKGROUND

Petitioner Ismail Ali Al Rammi is a Yemeni citizen born in 1973. He is the husband of Petitioner Soaid Salh Ahmad Al Rammi ("Mrs. Al Rammi") and the brother of Petitioner Adel Ali Ahmad Al Rammi. Mr. and Mrs. Al Rammi have two children, Muhammad and Abdullah Ishmael, who are approximately 6 and 10 years old. *See* Declaration of Jared A. Goldstein ("Goldstein Decl.") ¶ 4.

From November 1999 until September 2001, Mr. Al Rammi worked in Dubai, United Arab Emirates. He spoke by telephone with his family shortly before September 11, 2001, and discussed his plans to return home to Yemen. His family has not heard from Mr. Al Rammi since that phone call. In 2002, Adel Al Rammi and Mrs. Al Rammi saw Mr. Al Rammi's name included on a list of 62 Yemenis detained at Guantanamo published in the *September 26 Weekly*, a newspaper published by the Yemeni Army. Mrs. Al Rammi has sent letters to Mr. Al Rammi at Guantanamo but has received none in return. After five years without word from Mr. Al Rammi, Mrs. Al Rammi is desperate to locate her husband. *Id.* ¶¶ 6-11.

In August 2005, a security detail from the Yemeni government visited Guantanamo, apparently for the second time, and met with Yemeni nationals detained there. On August 28,

2

2005, days after those meetings, the Yemeni government released a second list of Yemeni nationals held at Guantanamo. Mr. Al Rammi was again included on the list. *Id.* ¶¶ 12-13.

Although Mr. Al Rammi has twice been identified by the Yemeni government as being detained at Guantanamo, Mr. Al Rammi's name does not appear on a list of detainees released by the Department of Defense ("DOD") on May 15, 2006, in response to a lawsuit brought under the Freedom of Information Act ("FOIA"). The DOD list purports to include the names of all foreign nationals who have been detained at Guantanamo from January 2002 to May 2006. *Id.* ¶¶ 15. The DOD FOIA list, however, cannot be considered authoritative. The names on the DOD list have not matched the names of detainees identified in other records released by DOD under FOIA, such as documents from the Combatant Status Review Tribunals ("CSRTs") and Administrative Review Boards ("ARBs"). *See* Declaration of Joshua W. Denbeaux ("Denbeaux Decl.") ¶¶ 9-19. Differences between the names used for the same detainee in different government documents have ranged from small spelling differences to the use of entirely different names. *Id.* ¶¶ 16-19.

Confusion over the names by which the United States refers to the detainees at Guantanamo has led to considerable difficulties in many of the habeas cases brought on the detainees' behalf. One of the three Guantanamo detainees who reportedly committed suicide in June 2006 had not been allowed to meet with his lawyer because the name of the detainee given to the lawyer by the detainee's father did not match the detainee's name in the United States' records. Denbeaux Decl. ¶ 7. Several detainees have been kept under entirely false names. *See, e.g., id.* ¶¶ 16-19; Declaration of Jan K. Kitchel.

Counsel for Petitioners have made and are continuing to make many attempts to obtain additional information that would help identify Mr. Al Rammi as a Guantanamo detainee or to eliminate that possibility. Counsel have sent the biographical information they have obtained

about Mr. Al Rammi to Respondents' counsel to see if the information matches data in DOD databases. Counsel have provided Respondents' counsel a photograph of Mr. Al Rammi. *Id.* Respondents' counsel has been very cooperative in these endeavors. They have informed Petitioners' counsel that they have been unable to identify Mr. Al Rammi as the name of a detainee held at Guantanamo, and they have not found a match for the photograph of Mr. Al Rammi, but they cannot rule out the possibility that Mr. Al Rammi is being held at Guantanamo under another name. Goldstein Decl. ¶¶ 15-16.

Petitioners' counsel have also sent several inquiries to various departments of the Yemeni government to verify Mr. Al Rammi's detention at Guantanamo. Petitioners' counsel are in the process of making additional contacts with the Yemeni government and are attempting to follow up on those inquiries. Petitioners' counsel have also been in close communication with HOOD, a Yemeni human rights organization, as well as Amnesty International, both of which have been in touch with Mr. Al Rammi's family. Petitioners' counsel have also sought information from the International Committee of the Red Cross. Goldstein Decl. ¶¶ 17-18.

Petitioners' counsel have also been undertaking a laborious process to narrow the names on the DOD list that actually could be Mr. Al Rammi. Detainees whose listed ages differ considerably from Mr. Al Rammi's reported age have been eliminated from consideration. Of the remaining names that could actually be Mr. Al Rammi, Petitioners' counsel is attempting to examine the known or obtainable information about the detainees (primarily from the CSRT and ARB documents made available through FOIA). Counsel hope that they will either find information that could lead to a positive identification of Mr. Al Rammi or, at least, further narrow the possible names under which Mr. Al Rammi may be held. Petitioners' counsel have been in touch with counsel for other Guantanamo detainees in an attempt to elicit any additional information that could lead to a positive identification of Mr. Al Rammi or the elimination of

additional names from the DOD list from consideration. If Petitioners' counsel are unable to make a positive identification of Mr. Al Rammi from the names provided on the DOD list, or to eliminate all names on the DOD list, Petitioners' counsel are planning to assemble the list of names they cannot eliminate from the DOD list, which they will present to Respondents' counsel to see if a positive identification can be made. Goldstein Decl. ¶¶ 19. Although Respondents have been cooperative to date, it may be necessary in the future to seek leave to obtain formal discovery from Respondents in order to obtain information relevant to Mr. Al Rammi's whereabouts.

Through these various processes, Petitioners' counsel anticipate they will find the information that will lead this case either to be dismissed or to go forward.

## ARGUMENT

I.    **THIS COURT CANNOT RESOLVE THE FACTUAL QUESTION WHETHER MR. AL RAMMI IS BEING DETAINED AT GUANTANAMO AT THIS PROCEDURAL STAGE**

The Court's show cause order raises a factual question relevant to this Court's subject matter jurisdiction. As the Supreme Court has held, this Court's jurisdiction extends to petitions for habeas corpus brought by detainees held by the United States at Guantanamo alleging that the detention violates the Constitution, laws, or treaties of the United States. *Rasul v. Bush*, 542 U.S. 466, 473 (2004). Congress has provided, however, that this Court's habeas power, however, "shall not extend to a prisoner unless . . . [h]e is in custody under or by color of the authority of the United States . . ." 28 U.S.C. § 2241(c)(1). Accordingly, unless Mr. Al Rammi is detained by the United States, this Court lacks subject matter jurisdiction over his Petition. Moreover, it is apparent that the Court's show cause order is directed at the *factual* basis for Petitioners' invocation of this Court's subject matter jurisdiction rather than the *legal* sufficiency of the

pleadings. The Petition unequivocally alleges that Mr. Al Rammi is detained by the United States at Guantanamo. *See* Petition ¶¶ 3, 14.

Accordingly, the Court's show cause order raises a factual question relevant to subject matter jurisdiction. It is firmly established, however, that this Court cannot resolve factual disputes over its subject matter jurisdiction without affording Petitioners adequate opportunity to discover evidence relevant to jurisdiction. Additional time is warranted here because, even in the absence of an opportunity to pursue formal discovery, Petitioners are pursuing several informal avenues to obtain additional information that may resolve this issue.

> **A.      This Court Cannot Resolve Jurisdictional Facts Without Giving Petitioners the Opportunity to Pursue Jurisdictional Discovery**

In deciding a motion to dismiss for lack of subject matter jurisdiction, a court ordinarily must accept as true all factual allegations made in the complaint. As the D.C. Circuit has declared: "[T]he district court may consider materials outside the pleadings when deciding a motion to dismiss for lack of jurisdiction, but it must still accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharmaceuticals, Inc. v. FDA,* 402 F.3d 1249, 1253-54 (D.C.Cir.2005); *see also Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, (1993). To be sure, when factual allegations supporting subject matter jurisdiction have been called into question, a court has authority to resolve the dispute. *See Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992) ("But where necessary [to resolve questions of the court's subject matter jurisdiction], the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

It is firmly established that this Court cannot resolve disputed questions of fact relevant to its subject matter jurisdiction without giving Petitioners adequate opportunity to discover and present those facts. As the D.C. Circuit has held: "[S]hould the trial court look beyond the

pleadings [in determining its subject matter jurisdiction], it must bear in mind what procedural protections could be required to assure that a full airing of the facts pertinent to a decision on the jurisdictional question may be given to all parties. Indeed, this Court has previously indicated that ruling on a Rule 12(b)(1) motion may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction." *Herbert*, 974 F.2d at 198; *see also Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) ("We have previously required that plaintiffs be given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion."); *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) ("The district court retains 'considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction,' but it must give the plaintiff 'ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'") (quoting *Prakash v. American University,* 727 F.2d 1174, 1179-80 (D.C. Cir. 1984)); Wright & Miller, Federal Practice & Procedure § 1350 ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion. Although a district court has discretion in the manner by which it resolves an issue of subject matter jurisdiction under Rule 12(b)(1), a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant.").

  These authorities establish that a court cannot resolve disputed factual questions relevant to subject matter jurisdiction without according each side ample opportunity to secure and present evidence relevant to jurisdiction. The particular cases cited above arose under Federal Rule of Civil Procedure 12(b)(1), rather than in the context of habeas corpus petitions, but the same principles relevant to a court's determination of its subject matter jurisdiction apply here. Indeed, federal courts routinely apply the principles of Rule 12(b)(1) to habeas actions. *See, e.g., Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987). A court cannot apply a lesser

standard for dismissing a habeas petition than would be applicable under the Civil Rules. As the Supreme Court has stated, "There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." *Harris v. Nelson*, 394 U.S. 286, 292 (1969). Moreover, federal Rule of Civil Procedure 81(a)(2) provides that the Civil Rules apply to a habeas petitions except to the extent that Congress has provided otherwise in "statutes of the United States, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Proceedings." As no such statute or rule is applicable here, this Court must adhere to the principles declared by the D.C. Circuit in cases arising under Federal Rule of Civil Procedure 12(b)(1), and cannot dismiss a habeas petition without giving Petitioners an ample opportunity to discover and establish jurisdictional facts.

  **B.**  **Additional Time Is Warranted for Petitioners to Continue Informal Discovery or, if Necessary, to Seek Leave to Conduct Formal Discovery Regarding Mr. Al Rammi's Presence in Guantanamo**

  Petitioners have had no opportunity to engage in discovery. This case has been stayed since February 2006. Unless the Court lifts the stay, Petitioners cannot even seek leave to pursue discovery of the jurisdictional facts raised by the Court's order. Yet the evidence relevant to those facts—the possible presence of Mr. Al Rammi at Guantanamo—is peculiarly within the possession of Respondents. Without giving Petitioners opportunity to discover evidence held by Respondents relevant to subject matter jurisdiction, this Court cannot dismiss this case at this procedural stage.

  Notwithstanding the stay imposed in this case, Petitioners' counsel have made and continue to make many inquiries to find additional information relevant to whether Mr. Al Rammi is being detained at Guantanamo. Petitioners' counsel have sought information from Mr.

8

Al Rammi's family, the government of Yemen, Amnesty International, the International Red Cross, HOOD (a Yemeni human rights organization), and counsel in other cases brought by Guantanamo detainees. Those inquiries are ongoing. In addition, Petitioners' counsel have been undertaking the laborious process of combing the CSRT and ARB records released by DOD in an attempt to find evidence to confirm (or deny) that Mr. Al Rammi is being held at Guantanamo. Petitioners need additional time to continue to pursue those inquiries.

To date, Petitioners have not sought to lift the stay imposed in this case in order to pursue discovery. The Department of Justice has been cooperative in helping Petitioners in their attempt to determine Mr. Al Rammi's whereabouts. Counsel for the Department of Justice has informed the undersigned counsel that if Petitioners provide additional biographical information about Mr. Al Rammi, Respondents will continue to use that information to try to confirm or deny Mr. Al Rammi's presence at Guantanamo. Petitioners need additional time to continue to pursue such informal discovery. If it becomes necessary to seek leave to pursue formal discovery regarding Mr. Al Rammi's presence in Guantanamo, Petitioners' counsel will seek it.

While these inquiries into Mr. Al Rammi's whereabouts continue, Petitioners request that this Court hold in abeyance any resolution of the disputed facts regarding its subject matter jurisdiction. In particular, Petitioners request that the Court maintain the case in its current procedural posture for an additional six months while these inquiries continue. If during that time either Petitioners or Respondents find information that would establish that Mr. Al Rammi is or is not being held at Guantanamo, counsel will promptly inform the Court. If information becomes available that Mr. Al Rammi is not being held at Guantanamo, Petitioners will promptly move to withdraw the Petition. Conversely, if information establishes that Mr. Al Rammi is being held at Guantanamo, Petitioners will promptly move for entry of the Protective Order so that counsel can proceed with their representation.

## II. EVEN IF IT WERE APPROPRIATE FOR THE COURT TO RESOLVE DISPUTED JURISDICTIONAL FACTS AT THIS STAGE, THERE IS NO BASIS FOR THE COURT TO RULE THAT IT LACKS JURISDICTION

Even if it were appropriate for the court to resolve disputed jurisdictional facts at this stage, this Court would have no basis to dismiss the petition. Petitioners have presented substantial evidence to support their assertion that Mr. Al Rammi is detained by the United States at Guantanamo Bay. Twice, the Yemeni government has identified Mr. Al Rammi as a detainee held by the United States at Guantanamo Bay. The second time the Yemeni government identified Mr. Al Rammi as a Guantanamo detainee was in August 2005, days after Yemeni officials had visited Guantanamo and met with the Yemeni detainees. In identifying Mr. Al Rammi as a Guantanamo detainee, the government of Yemen declared that the information had been provided by U.S. authorities.

In contrast, the list of Guantanamo detainees DOD released in response to Freedom of Information Act litigation does not rule out the possibility that Mr. Al Rammi is held at Guantanamo. In many cases, the names on the DOD list differ substantially from the names by which detainees are known to families. Several detainees have been held under entirely false names. The absence of Mr. Al Rammi's from the DOD FOIA list provides no basis for this Court to rule that Mr. Al Rammi is not being held at Guantanamo.

The United States has not and apparently cannot authoritatively declare that Mr. Al Rammi is not detained at Guantanamo. Rather, the United States has stated that its records of the Guantanamo detainees do not include the name Ismail Ali Al Rammi. As counsel for the United States has conceded to the undersigned, it is possible that Mr. Al Rammi is being held at Guantanamo under another name. Accordingly, this Court has no evidence that could support a finding that Mr. Al Rammi is not detained at Guantanamo. Thus, even if the procedural posture

of the case did not preclude a resolution of disputed jurisdictional facts, the evidence before the Court provides no basis for the Court to resolve the question against Petitioners.

## CONCLUSION

For the reasons discussed above, this Court cannot dismiss the Petition. Petitioners should be given at least six months to pursue informal discovery or, if necessary, formal discovery relevant to the jurisdictional question raised by the Court in its show cause order.

Respectfully submitted,

_____/s/_____
Jared A. Goldstein
Roger Williams University School of Law
Ten Metacom Ave.
Bristol, Rhode Island 02809
Tel: (401) 254-4594
D.C. Bar No. 478572

Dated: September 11, 2006